### NATHANIEL A. HAVEN, *et al.*
*vs.*
### EBENEZER WENTWORTH, *Trustee of Thomas Brown.*

A person cannot be charged as a trustee on account of a supposed " debt," if the debt be contingent. Nor can he be charged on account of " goods," &c. in his hands, unless they are subject to attachment or are so situated, that an action would lie for them in favor of the principal.

The invariable usage of an agent in respect to the funds with which he is entrusted binds his employers, if that usage is known and recognized by them.

Such funds, when held as security for a certain class of the creditors of the principal, do not render the agent trustee to other creditors till the first class are paid.

THIS was a trustee process, in which the principal was defaulted and a disclosure made by the trustee, February term, 1817 ; at the ensuing September term leave was given the trustee to file to some of the interrogatories further answers of a more specific nature, and at February term, 1819, the whole disclosure was completed.

The material facts in it, bearing upon the liability of the trustee, were, that some years since an insurance association was formed in Portsmouth, of which both Brown and Wentworth were members. A room was hired by the association and Wentworth appointed their agent or broker.

The premium notes were all made payable to Wentworth and his order, or bearer, and were always retained in his custody as a fund to indemnify those, who might sustain losses on policies subscribed in their office by the respective members.

An account was opened with each member, in which he was credited with all notes received on his insurances, and debited with all notes returned, where policies had not attached, with all losses on policies by him subscribed in the office, and with his due proportion of the annual expenses of the association.

This practice did not originate from any by-law of the association, but was the result of a general understanding among the members, and had been the invariable usage since the association commenced business.

It did not appear that Brown had made any express agreement as to the disposition of his notes; but he had always been a member of the association, his premium notes had always been made payable to Wentworth, and, in his business at the office, he had known and recognized the usage before mentioned.

When the writ in this action was served on Wentworth, the credit side of Brown's account exceeded the debit side; but policies to members of the association had before that time been signed in the office by Brown, on which the losses then and since incurred, together with such premium notes, as had either been returned or were of no value, and Brown's share of the annual expenses amounted to more than the balance which appeared on the books in favor of Brown.

Some of the notes credited to Brown had since been assigned in part payment of those losses; others were now in suit for collection, and the remainder were still in the custody of Wentworth as agent for the association, and he claimed a right to appropriate the proceeds of them, when collected, to the payment of the demands which originated against Brown in the association.

*Haven & Mason*, counsel for the plaintiffs.

*Cutts & Pitman*, for the trustee.

WOODBURY, J. delivered the opinion of the court.

Our statute in relation to trustees is a substantial transcript of a statute in Massachusetts on the same subject; and both of these statutes in many respects resemble the custom of London concerning foreign attachments and garnishees.(1)

(1) Com. Di. " London," N. 1.—3 Wils. 297, Fisher vs. Lane et al.— 1 N. H. Laws 173.

Hence the decisions under the above custom and under the Massachusetts statute have always been thought entitled to much weight in the construction of our own statute. Under them it has been held, that a person cannot be charged as a trustee for " credits" or " debts," unless an *absolute* debt or liability exist against him in favor of the principal. *Bac.*

*Ab. " Custom of London." H. 1.*—1 *Rolle Ab.* 551.—1 *Mass. Rep.* 471.—3 *Mass. Rep.* 33, 68.—11 *Mass. Rep.* 493.

Haven
*vs.*
Wentworth.

For the principal could not recover of the supposed trustee a debt still contingent ; and the creditor of the principal, possessing only his power, cannot have judgment, when no debt exists, *solvendum in presenti aut futuro.*

As this is an equitable proceeding, it has been contended, that the debt due from the trustee must be equitable as well as legal ; but the soundness of this distinction need not be settled in the present case.(1)

(1) Wendell *vs.* Livermore, Rock. ss. Sept. term, 1802.

In respect to "goods and effects" in the hands of the trustee, it has been held that he is not chargeable for them, unless they are the subject of attachment and execution, or unless a present right of action for them exists in favor of the principal.(2)

(2) 9 Mass. Rep. 537.—7 Mass. Rep. 261, 438.— Sed. 14 Mass. Rep. 272.

The application of these doctrines to the disclosure under consideration has, after some hesitancy, inclined us to an opinion, that the trustee ought to be discharged.

The origin of the insurance association, the office held by the trustee, the form of taking the premium notes, the invariable usage and understanding as to the disposition of the notes, which was in itself reasonable, and had been recognized by the principal, all indicate, that the credits of each member on the agent's books, were merely hypothetical and contingent. They were always subject to a deduction of all his premium notes returned, his proportion of the current expenses of the association, and the amount of his losses on policies subscribed in that office. No member would consider his interest in the apparent credit upon the books, as absolute ; he would rather regard it as a contingent fund, subject to be reduced, or even extinguished, according to the extent of the above deductions ; and consequently, the fund would be bound by the usage. 9 *Mass. Rep.* 155.—10 *do.* 26.—11 *do.* 85.—7 *do.* 43.—13 *John.* 44.*

Regarding the fund then as a " debt," it was so fast as the premium notes were collected, subject to particular appropriations ; and before the last disclosure, those appropriations had been made to the amount collected.

---

* 21 John. 230.—1 Broderick & Bingham, 223.

Haven
*vs.*
Wentworth.

But other notes remained in the hands of the trustee, which may, for ought that appears, be valuable and be hereafter collected. The trustee, however, cannot be charged on account of them; because, as "goods and effects," they, being negotiable notes, are not the subject of attachment or execution.(1)   And also, because no action could have been sustained for them by the principal. Trover would not have lain, as there was no conversion; and assumpsit in any form would have failed, as they had neither been demanded by the principal, nor collected by the agent.(2)

(1) 12 John. 220.—7 Mass. Rep. 439.—9 Mass. Rep. 537.

(2) 8 John. 105.—11 John. 518.—3 East. 169.

An additional reason, which is paramount to all others, and which characterizes the whole case, is, that the premium notes, whether uncollected or collected, are upon the disclosure to be considered a qualified pledge for specific purposes; and till those purposes are accomplished they cannot be reached in the hands of the agent.

This clearly distinguishes it from all the cases concerning set-offs by general brokers. 1 *D. & E.* 113.—16 *East* 58.—1 *Maul. & Selw.* 494.—2 *do.* 112.—4 *do.* 566. Because those cases rest on general principles, and are not cases where an association like this was formed; the premium notes running to the broker himself; and an established usage existing among the members for the broker to hold the proceeds of the notes as security to the insurers in the office.

We are aware, that our view of the case may, in the event of the funds of the principal being insufficient to satfy all the demands of the office, cause some difficulty in the apportionment of the funds among the claimants. If the principal be solvent, the question is of no consequence; but if insolvent, these funds might, in analogy to bankrupt estates, and to voluntary assignments for the benefit of creditors, be divided in an equal ratio, among those entitled to receive them. Or they might, as appears more feasible and proper under all the circumstances, be paid over by the agent to the creditors in the office, according to the priority in the date of their claims.

Neither of these courses would furnish any better ground of complaint, than a separate creditor would have in England, where his claim on partnership funds is postponed till all the partnership debts are first satisfied. *Cow.* 445, *Fox vs. Hanbury.*—3 *B. & P.* 289.—*Doug.* 650.—1 *East* 367.—2 *John.* 282.

It is apparent, that in neither of these courses, will the principal be able to withhold or conceal these funds from his honest creditors; because, in the end, they are all liable to the payment of his debts; first, the debts incurred in the association, and next the debts out of the association. As little, too, can the trustee evade responsibility; because, in due time, he must account for all the funds with somebody; and the only present complaint is, that he first appropriates them to the payment of those who have become creditors in the office.

We have attempted to show, that under all the circumstances, this complaint is ill founded; but if expectations are entertained, that, after the payment of that class of creditors, a balance will remain in the hands of the trustee, this action may be continued till that payment is made.

The plaintiffs may then have the first lien upon such sum as shall remain. If no such expectations are entertained, let the trustee be discharged.

*Trustee discharged.*