# KALEY *vs.* ABBOT, & THE N. H. ASYLUM, Trustee.

In process of foreign attachment it appeared that the defendant, having agreed with the Trustees to deliver them a quantity of locks, had supplied them to the value of $55 13, when the suit was brought. At the time of the contract and until the suit, he was doing business merely as agent for another, but this fact was not disclosed to the Trustees until the service of the writ, and the defendant then informed them of it, and also notified them that he should not proceed with the contract. The principal came in, and claimed the price of the locks as his property.—*Held,* in the absence of fraud, that the Trustees were not chargeable.

After the service of the writ, the Trustees made a contract for the locks with P.

& R., who purchased them of the defendant.—*Held*, that such purchase did not in any way affect the liability of the Trustees.

FOREIGN ATTACHMENT.   The case was submitted to this court for decision upon the following facts.

In the month of March, 1842, the trustees of the Asylum made an agreement with Theodore Abbot to supply them with a quantity of locks, and, before the service of the writ in this suit, he delivered the locks to the value of $55.13. Immediately after the suit was commenced he notified them that he had been acting as agent for Ephraim Abbot, and should not furnish any more locks on the contract.   The Trustees then made a contract with Porter & Rolfe, who furnished them with locks, &c., amounting in value to $178.87.

When the Trustees made their contract with Theodore Abbot, he did not tell them that he acted as agent for Ephraim, nor did they know it until after the service of the writ.   On the 26th of December, 1842, they paid to Porter & Rolfe said sum of $55.13, who gave them a bond to indemnify them on account of the trustee suit.   This bond was given on the account and at the request of Ephraim Abbot, and the money was used to carry on his business by Theodore as his agent.   Ephraim now comes in and claims the ownership of the property in the hands of the Trustees, and it is agreed that he may annex hereto the affidavit of Theodore, a contract and power of attorney, a lease from Theodore to Ephraim, and a schedule of property sold to Ephraim, all which the Trustees adopt as a part of their disclosure.

The affidavit of Theodore Abbot stated that in the spring of 1840, Walker, E. Abbot and others attached his property, consisting of locks, &c. in an unfinished state, and sold it on the writs, at auction, to Ephraim Abbot for $50.00.   At that time Ephraim had a mortgage on Theodore's premises and shop in Concord, and on the 2d of May Theodore leased the premises to Ephraim for two years, at a rent of $300.

On the 21st of October, 1840, Ephraim agreed with Theodore that the latter should carry on the business as his agent, upon certain terms expressed in a power of attorney, authorizing Theodore " to sell and dispose of the locks and other manufactured articles which I have this day purchased of Abraham Bean, deputy sheriff; which articles are at the shop aforesaid. Also, to use the tools, being part of the articles purchased as aforesaid. Also I do authorize said Theodore for me and in my name to manufacture knives and other articles of hardware, and for that purpose to purchase for me and in my name such materials as may be needed in the prosecution of said business, and in all respects to provide for and manage said business, and to pay the expences out of the proceeds thereof." He was also empowered out of the proceeds to pay the necessary expenses of his family, and the interest on his notes due the N. H. Savings Bank, so that the business might not be interrupted (as the bank had a prior mortgage on the premises,) by the bank taking possession and foreclosing their mortgage. After making these deductions, the balance was to be paid over to Ephraim, to be applied on his judgment against Theodore for $3726.23. Theodore was also authorized to execute all papers necessary in conducting the business.

On the 21st day of October, 1840, Ephraim Abbot placed a notice on the door of the shop, that the stock and tools were his property, and that Theodore acted as his agent. The notice remained there, and was intelligible for two years following, and a part of it remains there now. Since that time Theodore has done the business as agent, under the power of attorney. He contracted with the Trustees while he was merely an agent, and a part of the locks were the same which Ephraim purchased of Bean at the auction. Theodore did not inform persons to whom he sold property that he acted as agent, not considering it necessary ; but when he transacted any business in writing, he signed his name as agent.

After the commencement of this suit he sold locks to Porter & Rolfe, as agent, at a stipulated price, without any condition or reserve.

*J. Whipple,* for the plaintiff.

*Peaslee,* for the Trustees.

*Perley & Ainsworth,* for Ephraim Abbot.

GILCHRIST, J. The Trustees, having contracted with Theodore Abbot, he supplied them, before the commencement of this suit, with locks amounting in value to $55.13. Upon the service of the writ he notified them that he was only an agent for Ephraim Abbot; and they then made a contract with Porter & Rolfe for the locks, which were supplied them by Theodore Abbot. The Trustees did not know of the agency, until this suit was commenced. In this state of facts, Ephraim Abbot had a claim upon the Trustees for the price of the locks, as soon as the notice was given them; and he might have recovered the price in a suit against them, upon proof of his property.

The trustee process is regarded as an equitable action. *Haven* vs. *Wentworth,* 2 *N. H. Rep.* 93 ; *Boardman* vs. *Cushing,* 12 *N. H. Rep.* 114. Its object is to reach the property of the debtor in the hands of third persons. In applying this remedy, the facts must first be ascertained, and the ownership of the property determined. But it can never be appropriated to pay the debt of the plaintiff until it is shown to belong to the defendant. In this case, the property was not his. It belonged to Ephraim Abbot. The defendant was merely an agent. There has been no fraud in the case, and if the Trustees should be charged, the property of Ephraim Abbot would be taken to pay the debts of the defendant.

These remarks apply to the value of the locks purchased

by Theodore Abbot before the suit was brought.    There is no pretence that the Trustees are chargeable with the value of the articles bought of Porter & Rolfe.    The latter might contract with any person, with Theodore Abbot or with Ephraim Abbot, without in any way affecting the liability of the Trustees.

*Trustees discharged.*