## JAMES HUTCHINS *et a. versus* N. P. SPRAGUE and E. CARLTON, his trustee.

If A, with a view to defraud his creditors, convey goods to B, but B *bona fide* pays, or assumes to pay, on account of the goods, debts of A to the full value of the goods, B cannot be afterwards charged as the trustee of A.

IN this case the issue joined between the plaintiffs, and Carlton, the supposed trustee, was, whether Carlton had in his hands at the time of the service of the writ, or at any time since, any money, goods, chattels, rights or credits, of Sprague, and was tried here at May term, 1827. It appeared in evidence, that Sprague, by three several bills of sale, all made at the same time, but dated August 26, 28, and 30, 1824, conveyed to Carlton goods to the value of $664,21, and on the 28th August, 1824, Sprague assigned to Carlton notes and accounts to the value of $1492,69, upon which it appeared that the trustee had collected $142,09.

The bills of sale and the assignment purported to be absolute transfers of the property, and the plaintiffs introduced evidence, which had a tendency to show that the sale, although purporting on the face of the papers to be absolute, was in truth accompanied with a secret trust, which rendered it fraudulent with respect to creditors.

It was then shown by the trustee, that at the time when he took the said bills of sale, he assumed to pay a debt of Sprague amounting to $400, and that Sprague was indebted to him, and to a company with which he was connected, in the sum of $486,88, and that the value of the goods thus transferred to him, together with all the money he had received upon the notes and accounts assigned, did not amount to a sum sufficient to pay what was justly due to the trustee as aforesaid.

The court being of opinion, that, if the sale were fraudulent, the trustee had a right to retain in his hands the amount of what he had paid or assumed to pay, be-

fore the service of the writ in this case upon him, and that amount exceeding the value of the property which the trustee received, directed a verdict for the trustee, subject to the opinion of the court upon the foregoing case.

*Bell,* for the trustee.

On the case reserved, we take the following grounds.

1st, That an insolvent debtor in this state may prefer one of his creditors to another, or to all the others. *Wilkes* v. *Ferris,* 5 Johns. 335, and 412 ; *Ogden* v. *Jackson,* 1 Johns. 370 ; *Estwick* v. *Cailand,* 5 D. & E. 420 ; *Pickstock* v. *Lyster,* 3 M. & S. 371.

2d, That in the present case, the whole property assigned was not sufficient to pay the debts due to the trustee, and those assumed by him before the service of the plaintiff's writ, and that there consequently could be no fraud on the plaintiff or any other creditor, all the debtor's property being insufficient to pay the creditors, that were preferred. Oliver's Convey. 561 ; *Thomas* v. *Goodwin,* 12 Mass. Rep. 140.

3d, That if on the case reserved, the opinion of the court should be, that there is fraud in law in that transaction and no fraud in fact, the trustee would have a right to retain for his own debt and advances made before the service of the plaintiff's writ. *Murray* v. *Riggs,* 15 Johns. 571 ; *Thomas* v. *Goodwin,* 12 Mass. Rep. 140.

4th, That as under the trustee process in this state, the plaintiff can only claim " the right and credit" of his debtor, even if the transaction were fraudulent, as the debtor himself could not impeach it, the plaintiff could not.

*Goodall* and *J. Parker,* for plaintiffs.

1st, The transfer to the trustee was accompanied with a secret trust, and several other circumstances indicative of fraud, and is, therefore, as against creditors, altogether void.

This was established as a principle of the common law in the early stages of the English jurisprudence, and has been recognized in numerous subsequent cases.

In *Fermor's case*, 3 Co. 78, it is said, " the common law doth so abhor fraud and covin, that all acts, as well judicial as others, and which of themselves are just and lawful, yet being mixt with fraud and deceit, are in judgment of law wrongful and unlawful ; *quod alias bonum et justum est, si per vim, vel fraudem petatur, malum et injustum efficitur.*"

And in *Twyne's case*, 3 Co. 80, Pierce was actually indebted to Twyne, to whom he transferred, and to a greater amount than the value of the goods, but the transfer was held fraudulent, and the property liable to execution.

So in *Wimbish* v. *Tailbois*, 1 Plowd. 51, Hales, J. said, " when truth is mixt with covin as a noxious herb, and covin with truth, this conjunction and mixture makes the whole unsavory, and the goodness is perverted to wickedness"—and per Montague, Ch. J., in the same case p. 54, " covin may be where the title is good, and the title shall not give benefit to him that has it, by reason of the covin, for the mixture of good and ill together makes the whole bad, and the truth is obscured by the falsehood, and the virtue drowned in the vice." Vide also Co. Litt. 357, *b.* ; Com. Dig. Covin B. 1, 2 ; Bac. Abr. Fraud, A. ; Roberts' Fraud Con. 521, 547, *n. b.* 591, 596 ; 2 Pick. Rep. 129, *Harris* v. *Sumner* ; 14 Johns. Rep. 458, *Hyslop* v. *Clarke* ; Cowp. 434, *Cadogan* v. *Kennet* ; 2 D. & E. 587, *Edwards* v. *Harben* ; 1 Camp. 332, *Wordall* v. *Smith* ; 1 Cranch, 309, *Hamilton* v. *Russel* ; 12 Mass. Rep. 31, *Hills* v. *Elliot* ; 4 Johns. Rep. 598, *Sands* v. *Codwise* ; 20 Johns. 5, *Jackson* v. *Brush* ; 5 Cowen, 547, *Mackie* v. *Cairns* ; 4 Day's Rep. 284, *Beach* v. *Catlin* ; 5 Day, 341, *Merrill* v. *Meacham* ; 5 Binney, 76, *Numan* v. *Kapp.*

That no " consideration, however valuable, will uphold against a creditor, a conveyance, which is a fraud upon the law"—that an assignment " upon a confidence not expressed," and " held by a secret trust," is fraudulent against creditors—and that in such a case it is void

in toto is distinctly conceded in *Halsey* v. *Fairbanks and Trustee*, cited by defendant from Oliver's Conveyancing, 2 Ed. App. 563, 565, 570, 574.

The transfer in such case is void, not only by the common law, but the statute 13 Eliz. *c* 5, which may be considered part of our code, being in affirmance, and delaratory of the common law. Cowp. 434 ; 1 Cranch, 316 ; 14 Johns, 498 ; 15 Mass. Rep. 215, *Goodwin* v. *Hubbard*.

2d, The transfer being fraudulent the whole property was liable to attachment, and no lien exists in favor of the assignee.

It was liable to attachment and execution. 2 Pick. 129 ; 5 Mass. 144, *Widgery* v. *Haskell*; 14 Johns. 458 ; ditto, 493, *Sands* v. *Hildreth* ; 20 Johns. 442, *Austin* v. *Bell* ; 7 Cowen, 301, *Jackson* v. *Mather* ; ditto, 732, *Stutson* v. *Brown* ; and other authorities before cited.

And if the vendor had died the vendee might have been charged as executor *de son tort*. Yelv. 197 ; Cro. Jac. 271, *Hawes* v. *Leader* ; 2 D. & E. 588, 597 ; 7 Johns. Rep. 161, *Osborn* v. *Moss*.

From the policy of the law no lien exists in such case. 16 Mass. 324 ; 2 Pick. 137 ; 4 Johns. 599 ; 14 Johns. 465. To allow a lien " would be giving effect to a transfer condemned in law," 2 Johns. Ch. Rep. 582, *Riggs* v. *Murray*. *Fraus et dolus nemini patrocinari debent*." 3 Co. 78.

The cases where property fraudulently conveyed has been held liable to attachment or execution, all prove that no lien exists in such case, for where there is a lien there is a special property, and the goods cannot be attached and taken from the party having the lien. 4 Pick. 466, *De Wolf* v. *Dearborn* ; 2 Starkie's Rep. 337, *Houlditch* v. *Desanges* ; 11 Mass. Rep. 415 *Cowing* v. *Snow* ; 7 Cowen, 670, *Ingersoll* v. *Van Bokkelin* ; 2 Camp. 631, *Wolf* v. *Summers* ; Bac. Ab. Execution C. 4.

But the transfer being void, no lien can exist on general principles, without reference to the fraud and the policy of the law against a lien. The owner of a vessel

upon receiving a loan deposited her in the hands of the lender, and executed a bill of sale to him, whereon was an endorsement that the assignment was made as a lien or security for the loan and that the vendee should sell the vessel, repay himself, and pay the surplus to the owner ; the requisites of the ship register acts were not pursued ; and it was held that this was no lien but a mortgage ; that it was void under those acts, and that the lender could not retain the vessel until the payment of the loan.   5 Taunt. 642 *Wilson et a. Assignees* v. *Heather,*

The transfer being fraudulent it is as though there was no contract and the goods came casually into the hands of the vendee, and in such case he is not entitled to retain for a debt due himself. 15 Mass. Rep. 490, *Allen* v. *Megguire* ; 7 Taunt. 278, *Lucas* v. *Dorrien* ; 1 Starkie's Rep. 408, *Hartley* v. *Hitchcock* ; 3 Bos. & Pul. 485, *Houghton* v. *Matthews.*

The same doctrine was held by the majority of the court in *Jarvis* v. *Rogers*, 15 Mass. Rep. 389, and Parker, Ch. J. there says, " I have neither heard nor seen any judicial decision tending to prove that if a creditor accidentally gets possession of his debtor's goods ; or if his debtor commit them to him on a particular trust or confidence ; the creditor has a right to retain them as security for his debt.   p. 414.

This being a case of creditors pursuing their remedy against the propety of their debtor, the opinions of the minority of the court in *Jarvis* v. *Rogers*, are not applicable except a dictum of Putnam, J. p. 400, which is directly contradicted by the subsequent case of *Allen* v. *Megguire*, in the same volume.   But those opinions, so far as they relate to lien and set-off, are, with all due deference, untenable.   No principles are better settled, than that liens are of two kinds, particular and general, (vide Metcalf's Yelv. 67, *e* note,) and that torts and uncertain damages are not the subject of set-off.   Tidd's Prac. 604.   Those opinions disregard and destroy all

distinctions respecting liens, by substituting a fancied equity that a creditor may in any case, lawfully hold property which comes to his hands until his debt is paid ; and would originate a kind of set-off as to torts, on a supposition that a party liable in trover, and having at the same time a debt against the owner of the property, will necessarily recover a judgment for his debt cotemporaneous with that which may be rendered against him, in which case the executions might set-off against each other. However proper such doctrines might be in that case, and they were there overruled, it is believed they will not be extended to others.

The conclusion seems inevitable, that had the goods been attached they must have been held to satisfy the plaintiff's debt.

3d, The trustee process is a virtual attachment of the property, binding all that would be held by an actual attachment ; and peculiarly proper in case of fraudulent assignments, because it will hold goods which could not be come at to be attached, and because it enables the creditor to put the fraudulent assignee upon oath if he cannot otherwise establish the facts. 16 Mass. Rep. 318, *Burlingame* v. *Bell* ; 4 Pick. 503, *Hale* v. *Dennie.*

It was proper and necessary also in this case, for the purpose of giving us the avails of such notes and accounts as should be collected by the assignee.

The case of *Thomas* v. *Goodwin and Whiting, Trustee,* 12 Mass. 140, cited by the defendant, so far from supporting the defence, is in principle with the plaintiffs. The court there held, that Whiting must have been adjudged trustee had he been summoned immediately upon the transfer being made. He was discharged solely on the ground that the assignment, originally fraudulent, had been made valid by matter *ex post facto.* 1 East, 95, *Parr* v. *Eliason* ; 3 Lev. 388, *Smartle* v. *Williams.* Although once fraudulently assigned, the merchandize was afterwards fairly purchased. The fraud was purged be-

fore the service of the writ, by transactions and payments subsequent to the transfer ; and the case was in principle as though all the merchandize conveyed, had been before the service, re-delivered to the assignor. The payments made by the supposed trustee *were not made in pursuance of the fraudulent contract*, but were in consequence of orders given *subsequent* to the fraudulent conveyance.

In this case, on the contrary, there has been nothing *ex post facto* to make the transfer valid. If any payments have been made, they were *in pursuance of the fraudulent contract, and formed a part of it*, and the contract failing, it is as though they had never been made.

That this process has the effect of an attachment is settled also in *Halsey* v. *Fairbanks, and Trustee.* There, although debts to the value of the property were due the creditors who had become parties to the transfer, Mr. Justice *Story* remarks, " if that assignment be fraudulent in point of law as to creditors, then the right of the plaintiff against the trustee is complete." Oliver's Conveyancer, 561.

Supporting this point, directly or by implication, we refer also to 8 Mass. Rep. 486, *Parker* v. *Kinsman, and Trustee ;* 4 ditto, 511, *Dix* v. *Cobb, and Trustee ;* 13 ditto, 146, *Ingraham* v. *Geyer ;* 14 ditto, 271, *Clark* v. *Brown, and Trustee ;* 15 ditto, 290, *Allen* v. *Megguire, and Trustee ;* 3 Conn. Rep. 27, *Enos* v. *Tuttle ;* 4 Day's Rep. 146, *Naylor* v. *Fosdick ;* 5 Mass. 53, *Hatch* v. *Smith, and Trustee ;* 7 ditto, 261, *Chealey* v. *Brewer, and Trustee.*

The trustee process is denominated a foreign " *attachment*" and is a proceeding " *in rem*," although it may result in a proceeding *in personam* if the trustee does not deliver up the effects.

If the sale was altogether void against creditors, and they might have attached and held the property, it cannot be made good, nor the rights of the trustee enlarged, by their taking the only effectual mode left to attach it.

Hutchins
*v.*
Sprague et a.

The opinion of the court was delivered by

RICHARDSON, C. J. It is not disputed in this case, that previous to the commencement of this action, certain goods, accounts and notes passed, from the principal into the hands of the trustee ; nor is it disputed, that the amount due from the principal to the trustee, upon claims existing at the time the goods thus passed, together with the debt the trustee assumed to pay at that time, is greater than the value of the goods together with the amount of all the money that has been collected on the notes and accounts.

But it is contended, on the part of the plaintiffs, that the goods, notes and accounts went into the hands of the trustee under a contract that was, with respect to creditors, fraudulent and void ; that such a contract could give to the trustee no lien upon the goods and money received ; and that notwithstanding the debts due from the principal to the trustee may exceed the amount which has come to the hands of the latter, still the plaintiffs are entitled to recover, the trustee having no right to apply what he has received to the payment of the debt due to him from the principal. And the question is, whether fraud in the contract between the trustee and the principal would under the circumstances of this case render the trustee chargeable. If it would, there must be a new trial to ascertain if there were fraud ; if it would not, then the trustee is entitled to judgment on the verdict.

It is very clear, that, if the contract between the trustee and the principal were fraudulent, and these plaintiffs had attached the goods while in the hands of the trustee, the plaintiffs must have held the goods. For as the only title, which the trustee could have shown, must have rested upon the contract he made with the principal ; that being fraudulent and void, his title must have failed altogether. No lien could have been created by a fraudulent contract.

When a debtor dies insolvent, and one of his creditors has specific property in his hands on which he has no lien, upon the question whether such creditor can retain the property and set up his debt as an answer to a claim of it by the executor or administrator of the deceased, the judges of the supreme court of Massachusetts have been divided in opinion, Jackson and Putnam, Justices, having been of opinion that the creditor might retain the property, and Parker, C. J. and Thatcher and Wilde, Justices, being of a contrary opinion. 15 Mass. Rep. 389, *Jarvis* v. *Rogers*.

In the case of *Allen* v. *Megguire*, 15 Mass. Rep. 490, it was decided that a mere creditor having goods of his debtor in his hands has no lien upon them and may be charged as the trustee of his debtor on account of them. But in the case of *Thomas* v. *Goodwin, and Trustee*, 12 Mass. Rep. 140, it was decided, that where one who was summoned as trustee had received goods of the principal debtor under a fraudulent contract, but before the service of the process upon him had paid debts of the principal to the amount of the value of the goods received, he was entitled to be discharged.

As the fraud, in this last case, rendered void the contract under which the goods were received, it may seem at first view, difficult to reconcile these two decisions and to understand why the trustee might not protect himself by a debt previously contracted as well as by the payment of money afterwards on account of the principal. But we think they may be reconciled on the ground stated in the last mentioned case, which is in substance, that there is a *locus penetentiæ*, of which if the trustee avail himself, before the process is served upon him, by restoring the goods to the principal, he cannot be charged ; and that a *bona fide* payment to the value of the goods made to the creditors of the principal is tantamount to a restoration of the goods. And although the trustee might not have been able to avail himself of this principle for

his protection, had the goods been seized in his hands by virtue of a writ of attachment on the goods of the principal, we think it just and reasonable to adopt and apply it in this case. However fraudulent the contract under which the goods went into the hands of the trustee might have been, if, before the service of the process, he had repented of the fraudulent purpose and restored the goods to the principal, it is clear, he would have been entitled to be discharged in this case. And we see no reason why a *bona fide* payment of debts due from the principal to the full value of the goods, or even an actual and *bona fide* assuming to pay such debts to that value, should not be deemed equivalent in this case to a restoration of the goods.

We are, therefore, of opinion, that there must be in this case

*Judgment on the verdict.*