## BOARDMAN *vs.* CUSHING & Trustees.

Where a party, in order to secure a just debt, takes an absolute conveyance of personal property, and a creditor summons the vendee as trustee of the vender, fraud is not to be inferred, conclusively, from the form of the conveyance alone; and unless there are other circumstances, showing an express design to delay or defeat creditors, the trustee must be discharged, if the plaintiff does not pay or tender the debt.   The principle of the case, *Coburn* vs. *Pickering,* 3 *N. H. Rep.* 415, is not applicable, where the creditor summons the vendee as trustee of the vender.

Boardman *v.* Cushing & Trustees.

Where a mortgagee of personal property is summoned as trustee of the mortgager, unless the creditor performs, or tenders performance, of the condition, or procures an order of court for the delivery of the property to the officer, under the statute of 1832, the mortgagee is not bound to hold the property for the benefit of the creditor, but may use it with the assent of the mortgager, or, upon condition broken, may foreclose, by a sale, as if no process existed; being liable, however, for any surplus obtained on the sale. And so of a pledge.

A trustee, where there is no fraud, has a right to set off, or retain, for all demands due him from the principal, contracted before the service of the process, and payable at the time of the judgment.

FOREIGN ATTACHMENT. It appeared from the disclosures of Messrs. Haven, Sheafe, and Hale, three of the trustees, that on the 30th of October, 1835, Cushing, the principal debtor, by indenture, conveyed to John Haven, William Rice, Robert Rice, Henry Ladd, and Samuel Hale, nine sixteenths of the ship Fortitude, then at sea, to hold as collateral security for the payment of five notes, of $3000 each, payable to certain banks, represented by them, severally, on demand with interest. Cushing agreed to pay all the expenses of the ship, and they agreed, on the payment of the notes, to reconvey. And it was farther agreed, that in default of payment they might sell the nine-sixteenths of the ship, pay the amount of the debts, reïmburse themselves for their expenses, &c., and that any balance should be paid to Cushing. Hale was by the indenture appointed agent to take charge of the interest thus conveyed.

On the 15th of January, 1836, Cushing executed a similar indenture, reciting the conveyance of the remaining seven-sixteenths to two of the same individuals, Haven and Hale, and to James Sheafe, who were summoned as trustees in this case, to secure three other notes, of $3000 each, indörsed by them.

On the same day, Cushing executed to Haven, Sheafe and Hale an absolute conveyance of the seven-sixteenths of the ship, which was registered in the collector's office in Portsmouth.

This process was served on the trustees March 1st, 1836.

The ship arrived at Boston on the 12th of April, 1836, and

on the 13th Hale took possession of her in behalf of the parties interested in these conveyances. She was at that time subject to large liabilities, or liens, for seamen's wages, and other matters, and two of the trustees stated that they believed she could not then have been sold for sufficient to pay those demands and the sums for which she was held as collateral security.

A temporary register was taken out at Boston, in the names of the persons to whom she had thus been conveyed, and in May, 1836, an arrangement was made between Cushing and them, that the ship should be chartered for a voyage to Calcutta and back. She was so chartered, for the sum of $16.000, to Samuel Austin, Jr., May 19th, 1836.

She was insured on that voyage for $40.000.

Large repairs were made on her in Calcutta, and the money raised on bottomry.

October 20th, 1837, after her return to Boston, she was sold at auction for $26.200 ; and after deducting the charges upon her, and the outfits and expenses, and crediting her earnings, there was a balance of $18.501.17 to appropriate upon the demands for which she was held as security, which then amounted to $24.000.

From the disclosure of the Piscataqua Bank, one of the trustees, it appeared that Cushing transferred to the bank certain shares in the Portsmouth Company, July 16, 1834. The transfer was absolute, on its face, without any condition, but it was held as collateral security. Whether it was originally intended to secure only a single note, or was to be held as security generally, did not distinctly appear.

On the 5th of June, 1835, all the indebtedness of Cushing to the bank was adjusted by a change of security and debt, and the bank discounted his note for $12.000, on the security of those shares, and a new certificate of the shares, in the name of the bank, was issued the same day.

Subsequent to that time, and prior to March 1, 1836, the bank discounted divers other notes of Cushing, on which different individuals were sureties, or indorsers.

October 18, 1838, Mr. Ferguson, one of the indorsers, delivered to the bank a writing, signed by Cushing, reciting that he had pledged these shares for the payment of his notes to the bank, including those indorsed by Ferguson and others, and stating that the appropriation might be made for the indorsements, from the proceeds, when sold.

On the 20th October, the bank, having previously advertised the shares, sold them at public auction, the plaintiff protesting against any sale beyond the number necessary to reïmburse the bank for the specific loan made on the security of the shares, or the application of the proceeds of the sale to the liquidation of any other demands.

The bank stated an account, in the disclosure, in which the proceeds of the shares were credited, and all the liabilities of Cushing to the bank debited, leaving a balance due the bank, October 23, 1838, of $288.28.

*Goodrich,* (of Mass.) for the plaintiff.

I. The Piscataqua Bank is chargeable as trustee.

1. The conveyance, by Cushing, of the shares in the Portsmouth Company, to the Piscataqua Bank, is absolute on its face, and the bank caused certificates to be issued to itself, thereby assuming to be purchasers and owners. In point of fact, as appears from the disclosure of the bank, said shares were intended to be holden only as a pledge. The secret trust thus admitted avoids the conveyance as to creditors of Cushing, although valid between the parties. 8 *N. H. Rep.* 288, *Paul* vs. *Crooker ;* 3 *N. H. Rep.* 415, *Coburn* vs. *Pickering ;* 4 *N. H. Rep.* 176, *Parker* vs. *Pattee; Ditto* 309, *Trask* vs. *Bowers ;* 5 *N. H. Rep.* 364, *Lewis* vs. *Whittemore ;* 7 *Cowen* 732, *Stetson* vs. *Brown ;* 6 *N. H. Rep.* 69, *Smith* vs. *Lowell ;* 8 *N. H. Rep.* 274, *Greenleaf* vs. *Perrin ; Ditto* 48, *Carlisle* vs. *Rich.*

The plaintiff, by his trustee process, acquired the same interest in the shares as he would have acquired by an actual attachment in the ordinary manner.

The bank stands, its title having failed, as a simple creditor, having specific chattels in its possession, which it has no right to sell or detain.    15 *Mass.* 414, *Jarvis* vs. *Rogers ;* *Ditto* 490, *Allen* vs. *Megguire.*    The case of *Hutchins* vs. *Sprague*, 4 *N. H. Rep.* 469, if at variance with this position cannot be sustained.    The principles of that case, however, as stated by the court, when examined may not be found repugnant to the propositions here taken.

The position that the plaintiff acquired the same interest as by an attachment, is clear by the provisions of the statute of 1832.    This act provides that when property is mortgaged, or pledged, the mortgagee, or pledgee, may be summoned ; and if the mortgager shall have any interest, or right to redeem, the property shall be delivered over, subject, &c.    Before this statute, a mortgagee or pledgee was not liable to the trustee process.

The statute was intended to give a remedy, in such cases, by the ordinary process of attachment, the creditor first tendering the amount due the pledgee, or without such tender, by the trustee process.    Without this statute, a creditor might attach such property, in cases where the pledgee had taken a conveyance which might be avoided on the ground of fraud, if the creditor chose to take his chance of making out the fraud.

The statute was intended to give the creditor a right to acquire, by either mode of proceeding, such interest in his debtor's property as a creditor can by law acquire ; which interest may be the same or greater than the debtor could assert.

In this case the property appears to be under a pledge, (assuming the absolute conveyance to be disregarded,) and it is legal between the parties.    The facts existed, then, at the time of the service of the plaintiff's writ, which authorized him to acquire an interest in the property ; and it seems such interest cannot be divested because on a subsequent disclosure it appears the pledgee had no right to hold the property

against the creditor. *Cushing's Tr. Process* 20–22, *and cases there cited.*

2. Assuming the positions taken are not tenable, the bank do not hold, and cannot hold, the property on the ground of a lien for a general balance. *Smith on Mercantile Law* 460, 461, *cites Davis* vs. *Bowsher,* 5 *T. R.* 488 ; *Tooke* vs. *Hollingworth, Ditto* 215 ; *Vanderzee* vs. *Willis,* 3 *Bro. C. C.* 21 ; *Heams* vs. *Bance,* 3 *Atkins* 630 ; *Clark* vs. *Flint,* 22 *Pick.* 241. No lien for general balance can be sustained here, for the parties on the 5th of June, 1835, agreed to hold the shares as security for a loan of $12.000. In answer to the fourth interrogatory, the bank say that the operations on the 5th of June were a change of security and debt. The stock was, on the 4th of June, collateral for a note of $1833. On the 5th, one of $12·000 was substituted. It is evident the bank did not rely upon any usage, or agreement, to retain for a general balance. *Cushing's Trustee Process* 97 ; 2 *Kent's Com.,* 3d *Ed.,* 636 ; 6 *Term R.* 258, *Walker* vs. *Birch.*

3. Assuming the bank may have the right to set-off, it is of such claims only as were due and payable at the time of the service of the plaintiff's writ. 5 *Mass.* 215, *Greenough* vs. *Walker & Trustee.* It is submitted, however, that their claim to set-off must be confined to the balance remaining due on the $12·000 note. *Cushing's Trustee Process* 83, § 202.

Assuming the bank have a right to hold the property as a pledge for the $12·000 note, the trustee process must, certainly, under the statute of 1832, attach upon the property, the same not having been sold at the commencement of the plaintiff's suit, and of course no question of set-off, in this view of the case, can arise.

II. Haven, Sheafe, and Hale are chargeable.

1. They took an absolute conveyance of one third, each, of seven-sixteenths of the ship Fortitude, which was designed as collateral to each of them for $3000.

This is fraudulent, upon the reasons urged against the Piscataqua Bank.

2. When this property was conveyed to them they signed a declaration of the trusts, for which they were to hold the same, to secure $9000 ; and at the expiration of four months, in default of Cushing to pay, they were to sell the property and pay themselves. After the service of the plaintiff's writ, and at the expiration of four months, these defendants agreed with the owners of the remaining nine-sixteenths, to advance money for an outfit, to postpone the payment of their $9000 twelve months from the time the same was originally due, &c. &c. This is a distinct change of the trusts and purposes for which the parties agreed to hold the vessel, and operates as a waiver of the right of these defendants to hold as they originally might.

The defendants appear to be absolute owners of the seven sixteenths, the real contract is confined to the knowledge of Cushing and themselves ; and this secret understanding, not contained in the instrument constituting their title, may be changed at their pleasure, they taking the consequences resulting therefrom. The trustee process intervenes between the first and second declaration of the trusts attending the assumed ownership of the vessel. Where the possessor abandons his lien, the property may be attached, or he may be held as trustee. *5 Pick. R.* 178, *Swett* vs. *Brown & Trustee ; see, also,* 3 *Johns. Ch. R.* 422, *Sawyer* vs. *Wood ;* 7 *Ditto* 174, *Hawley* vs. *Mancius.*

3. Admitting that the defendants can hold the seven-sixteenths as collateral for the $9000, the plaintiff is entitled to the property subject to such claim, as it was when the $9000 became due, and the defendants might have sold. The defendants had no right, as against the plaintiff, to make a new contract, and throw the losses and depreciation of such proceeding upon the plaintiff.

When the defendants took possession, in May, 1836, the ship was worth $40.000, and the defendants insured for that sum. They must, upon the most favorable view of their

rights, be holden for seven-sixteenths of this amount, less the $9000 due them, inasmuch as they have deprived the plaintiff of the ship at a time when it would have produced this sum.

*Bartlett, Cutts, Haines, & Hayes,* (of Maine) for the trustees, cited *Hathaway* vs. *Russell*, 16 *Mass. R.* 473; *Boston Type Co.* vs. *Mortimer & Tr.*, 7 *Pick. R.* 166; *Ripley* vs. *Severance & Tr.*, 6 *Pick.* 474; 13 *Petersdorff's Abr.* 549; 1 *Story's Eq.* 320, 477, 591.

PARKER, C. J. The transfer of seven-sixteenths of the ship Fortitude, to Messrs. Haven, Sheafe, and Hale, on the 15th of January, 1836, was in effect a conveyance in mortgage, with an express power of sale, and may be treated as such. The plaintiff contends that it was void, as against creditors, because, in addition to the indenture declaring the sale, and the conditions and agreements connected with it, an absolute transfer of the seven-sixteenths was taken, and registered at the custom house in Portsmouth.

If that were so, a question might arise, on the facts stated in the disclosure, whether the trustees could be held liable here, the property never having been in their possession in this state. The conveyance was made in this state, but the ship was not then put into their possession, and could not have been so. They were not trustees, on the execution of it. 8 *N. H. Rep.* 273, *Greenleaf* vs. *Perrin & Tr'ee.* She never returned here. The trustees took possession of her in Massachusetts, where this process did not extend. She could not have been sold there, on any execution issued in this case. Were the trustees bound to bring her here, to answer on this process, for the benefit of the plaintiff? Were they bound to bring her here, that the plaintiff might contend, when she was so brought, that their claim to her was void?

But we do not find it necessary, in the decision of this case, to examine that question, as we are of opinion that the

broad principle of Coburn *vs.* Pickering, and other cases cited, however proper it may be in the case of attachment, (and where the vender, whose claim is alleged to be fraudulent, by reason of a secret trust, appears as plaintiff, or defendant, in a litigation respecting the title to the property,) cannot be applied in a suit where the party, who contests the sale as fraudulent, summons the vendee as a trustee of the vender, and has an opportunity, if he sees fit, to examine him on oath relative to the terms, conditions, and circumstances, attending the sale.

In *Hutchins* vs. *Sprague & Trustee,* 4 *N. H. Rep.* 469, where the plaintiff contended that the transfer of the property was upon an express design to defraud creditors, the court held that the trustee could not be charged. The opinion seems, from the report, to have been placed, somewhat, upon the ground that there was, in case of a fraudulent transfer, a *locus penitentiæ;* and that if the vendee assumed *bona fide* to pay debts of the vender, the fraud, to that extent, was thereby purged. But there was nothing in the facts of the case which could place it on that basis, all the assumption to pay having been made at the time of the alleged fraudulent transfer, and as a part of the agreement upon which the transfer was made. In order to sustain that decision, on the facts upon which it was predicated, it must be held that a transfer, with an express view to defraud creditors, could not, in a trustee process, be held to be void, so as to deprive the trustee of such equitable rights as he might have had in case the goods had been deposited, or pledged without fraud.

It is not necessary, however, to go to that extent, to decide this case, nor do we mean, at this time, to give an opinion upon a state of facts presenting conclusive evidence that the trustee held the property of the principal debtor by a transfer, not merely accompanied by a trust, which was not apparent—not under circumstances merely tending to mislead creditors, and therefore objectionable—but where the trustee held by virtue of an express fraudulent design and

transfer. The good faith of any part of such a transfer is not readily perceived, and the opinion in Hutchins *vs.* Sprague does not settle such a case, although the statement might, perhaps, have been such as fairly to present it.

In the present case no such express design is apparent. If placing upon the record an absolute conveyance of the seven sixteenths of the ship might have a tendency to mislead creditors, and if it might therefore be objectionable, on that account, in case the ship had been attached, in which case no evidence could have been derived from the vendees, in a suit by them to recover the property—it may be true, notwithstanding, that this conveyance was taken with no design to defraud, but on a supposition that it would more effectually secure their rights.

This form of process is regarded as an equitable action; and it would not consist with equity to deprive the party of a mortgage security, by reason of a mere mistake in the mode of taking it. *5 Pick.* 32, *Andrews* vs. *Ludlow & Tr.* ; 6 *Pick.* 474, *Ripley* vs. *Severance & Tr.* And the authorities establishing the right to set off on the part of the trustee, to which reference will be made upon another branch of this case, show the equitable rules adopted in this form of action in cases free from fraud.

The plaintiff, however, contends, that if he is not entitled to hold the mortgagees of the seven-sixteenths of the ship, for the whole value of that interest, on the ground of fraud; he is entitled, under the statute of 1832, to charge them, subject to their right to have their demands satisfied out of the property, and that the seven-sixteenths were of much greater value than the amount of the claims of the trustees.

The statute provides that a person holding property mortgaged, or pledged, may be summoned as trustee of the mortgager, or general owner; and if it appear, on disclosure, or otherwise, that the mortgager has any subsisting right, in law or equity, to redeem the same by the payment of the debt, or performance of the contract or condition, the court

may order that on tender of the debt, or on the performance of the contract or condition by the plaintiff, within such time as the court may order, the person so summoned shall deliver over the property to the officer, to be holden by him in the same manner as if attached on mesne process ; and on default thereof that he shall be charged as the trustee of the principal debtor, to the amount of such property. 2 *N. H. Laws* 83.

The language of the statute is that the court *may* make an order ; but this is not to be regarded as vesting in the court any discretionary power, to be exercised, or not, at pleasure. It is undoubtedly the duty of the court, in a proper case within the statute, to make such order.

But the plaintiff does not present such a case.

By the mortgage, the trustees had a right, on the return of the ship, to take possession of the share conveyed to them, and in default of payment of the notes, according to their tenor, they had the right to sell, reimburse themselves, and pay all expenses out of the proceeds, and were to pay the balance to Cushing. The mortgage bore date January 15th, 1836, and the notes were payable in four months. The trustee process was served the first of March, before the return of the ship. The notes became due May 15th, about a month after her return. The plaintiff made no tender, and obtained no order by which she could have been delivered to the officer on payment of the money.

It is not very clear that any such order could have been entered up, had a disclosure been obtained, and a motion made for the purpose ; for the ship came into Boston, in Massachusetts, and these mortgagees had, by the mortgage of January 15th, title to only seven-sixteenths of her. Had it not been that two of them were interested in another mortgage of the other nine-sixteenths, it might well admit of doubt whether the court here could order them to bring the ship into this state, for the purpose of delivering seven-sixteenths of her to the officer, unless by the consent of the

owners of the other nine-sixteenths, who were equally entitled to possession. And notwithstanding two of them were mortgagees, along with others, of the other nine-sixteenths, and thus had a greater interest, the question would still remain, whether the court could have ordered them to bring her here, for such purpose, against the consent of others who were interested and not summoned, and whose rights would be affected by such order.

It may be further remarked, that as mortgagees of the nine-sixteenths, these two trustees, with their co-mortgagees, had the right, on the arrival of the ship, to sell those nine-sixteenths, by the terms of that mortgage, the money being due.

But it is not necessary to settle the questions which might thus have arisen. No such order was made ; the condition of the mortgage of the seven-sixteenths was broken, also, by the non-payment; and the plaintiff made no tender of the amount of the debt to the trustees, in order to preserve his rights, even if such tender might have availed without an order of court, for which, however, no express provision is made in the statute.

Under these circumstances, what duty devolved on the trustees, in relation to the plaintiff ?

But for the statute of 1832, the trustee process could not have imposed on the trustees any obligation to the plaintiff, with regard to the mortgaged property, without a tender of the debt. The plaintiff had not brought his case within that statute. The condition of the mortgage was broken. The mortgagees, by the express terms of the instrument, had a right to sell, or they might hold—there was no order for payment, or any tender of payment. Was it the duty of the trustees to sell ? Certainly not, unless the trustee process imposed that duty upon them, which it did not. Two of them now swear, that they think the seven-sixteenths could not then have been sold for sufficient to pay the liabilities of that share and the mortgage upon it. If so, they must have had the right to endeavor to obtain the amount of their money,

by holding the ship for that purpose.    Was it their duty to
hold her inactive, and rotting at the wharf, until the plain-
tiff's process should be determined ?    Clearly no such duty
was imposed by the process, or existed in favor of the cred-
itors of Cushing.

It was under these circumstances, that the trustees united,
with others interested, in a charter party.    And upon the re-
turn of the ship, more than a year afterwards, (October 20,
1837,) she was sold at auction, for less than the amount of
the demands charged upon her ; the plaintiff having up to
that time obtained no order and made no tender.

We cannot, on these facts, now make such order, nor charge
the trustees for the value of the ship at that time, even if it
had been greater than the amount of their demands, for they
then owed no duty to the plaintiff.    The charter party was
made with the assent of Cushing, and they cannot be held
to account for any sum over and above what was obtained
by the charter party, and at the auction.    Haven, Sheafe,
and Hale, must therefore be discharged.

The remaining questions arise on the disclosure of the
Piscataqua bank, and upon this many of the remarks already
made are applicable.

The bank received of Cushing a conveyance of certain
shares in the Portsmouth Company, in pledge, or as collate-
ral security, and a certificate of the stock was taken out in
the name of the bank, so that the bank was apparently the
owner, but held in pledge.    There were several demands
due the bank from him, but it does not appear, from the dis-
closure, precisely how the pledge was originally made. At the
first account we have of the shares, they were held as collat-
eral security for a demand exceeding $1800.    It is not shown
that they were pledged for more than this at that time, al-
though it is not said they were not.    After this, and before
the service of the writ, the bank discounted a note of $12.000
on the security of these shares.    Subsequent to this, and be-
fore the service of the process, also, they discounted other

notes of Cushing, on which third persons were sureties or indorsers.

The conveyance was not void on account of the bank having taken a certificate as if the absolute owner, for the reasons stated in relation to the ship.

The note of $12.000 became due, and also others of the notes. The plaintiff obtained no order under the statute, if the case admitted of one. On the 20th of October, 1838, the bank sold the shares. The plaintiff forbid the sale, (except of so many of the shares as might be sufficient to pay the loan of $12.000,) and the application of the proceeds of any sale, except for that purpose ; but he tendered no payment.

The money having long been due, the bank had the right to sell all the shares. The evidence of ownership was contained in a single certificate of stock. Cushing made, and could make, no objection. This process could not prevent the exercise of the right, unless the statute of 1832 was pursued, or payment tendered. As suggested before, what operation a tender might have had we do not undertake to settle. It is not to be understood that it could have altered the case.

The shares having been rightfully sold, the money for them came rightfully into the possession of the bank. If it had appeared that the bank held the shares in pledge, to secure all the liabilities of Cushing, the bank would have had the right to appropriate the proceeds to the payment of all his debts contracted before the service of the trustee process. And although this does not appear, the result, on the authorities, must be the same.

A trustee has the right of set-off, or to retain for all demands due him from the principal, contracted before the service of the process, and payable at the time of the judgment ; and in some cases the court interpose beyond that.

It has been contended that the bank could retain, and set off, only for debts payable at the time the process was served, but the authorities do not sustain this position. 16 *Mass.*

476, *Hathaway* vs. *Russell ;* 7 *Pick.* 166, *Boston Type Foundry* vs. *Mortimer & Trustee;* 19 *Pick.* 20, *Smith* vs. *Stearns ;* 3 *Fairf.* 117, *Man. Bank* vs. *Merrill & Trustee.*

Cushing could not have prevented the bank from setting off all its claims due at the time of the disclosure ; and the plaintiff ought not to stand in any better situation, respecting debts contracted before the service of the process.

If the sureties, or indorsers, on the notes held by the bank, had not been solvent, the right to sell, with the consequent right of set-off, would have been an important security for the bank. It cannot make a difference if they were solvent, and will be relieved by the set-off. The right to set-off exists, notwithstanding there is a surety. 8 *N. H. Rep.* 539, *Mahurin* vs. *Pearson.* As the amount due exceeded the sum received for the shares, the bank cannot be holden.

*Trustees discharged.*