27   74
68  190
27   74
69  397

## LELAND v. SABIN & TR.

The process of foreign attachment is an equitable action, and where it is alleged that a note made by the trustee, and payable to the defendant, is not his property, the court will consider all the facts and adjudge accordingly.

It appeared that the note was payable to the defendant, that when it was given, his father professed to be doing business for him, and that he said "it was surprising how much money John was making by dentistry." On the other side it was shown that the note and the indorsements were in the hand-writing of the father, and the interest was paid to his executors. The maker and payee of the note were unknown to each other, and the deceased told the maker that he would always find the note in his possession. He inventoried it with his other assets, and the defendant never made any claim to it. One of the executors testified that he personally knew that his father furnished the money, and that the defendant never had any interest in it, and that his father was in the habit of lending money and taking notes therefor payable to his different relatives, but never gave up his claim to them when he retained possession of the papers. *Held*, that upon these facts the note did not belong to the defendant, and that the trustee was not chargeable.

FOREIGN ATTACHMENT.   The plaintiff brought an action against John Sabin, and summoned Seth Johnson and Willard Thorndike as trustees.   The suit was brought on a note dated on the 1st of November, 1843, made by Seth Johnson, for $500, and payable to John Sabin, or order, on demand, with interest annually.   The interest was indorsed in the month of November, in each year.

John Sabin, whose affidavit was taken by agreement, deposed that he never held any note or claim against Seth Johnson, that he never did any business with him, and never to his knowledge saw him.

Elias Bates stated that Silas H. Sabin, late of Claremont, died in the month of July, 1850, and that he and Silas A. Sabin were the executors of his will.   Among the effects was the note above described, the body of which, and all the indorsements thereon excepting the last two, were in the hand-writing of the deceased, and it was secured by a mortgage, and has always been in the possession of the exe-

cutors. Johnson has paid the interest on it, and John Sabin has never made any claim to it.

The note was scheduled by the deceased with the rest of his assets, and Silas A. Sabin testified that the deceased was in the habit of lending money on notes and mortgages, taking the securities in the names of his different relatives; that he never surrendered his right to them when he retained possession of the papers, but considered them as his own property, and such was the case with the note signed by Johnson.

The trustee, upon his examination, made the following statement:—

" There is outstanding against me a certain promissory note, dated Nov. 1, 1843, given for $500, made payable to John Sabin, or order, on demand, and interest annually, on which the interest is paid and indorsed up to Nov. 1st, 1851. Said note is signed by me, and I owe the same to some one. The note is secured by a mortgage on my real estate in Cornish, and the mortgage is running to John Sabin, his heirs and assigns. I received the consideration of the note from Silas H. Sabin, late of Claremont, deceased, and did the whole business with him, and I have ever paid the interest on the note to him up to his decease. Since his decease I have paid the interest to his executors. A true copy of the note is attached to the affidavit of Elias Bates herewith. I further say I have never known John Sabin personally, and never did my business with him.

Int. 2. At the time you gave the note and mortgage did not Silas H. Sabin say to you that he acted as agent for his son, John Sabin, or words to that effect.

Ans. by trustee. He did, surely. He pretended that he was doing business for John Sabin. I said to him, ' Dr. Sabin, I cannot be under the necessity of paying him the principal and interest in Boston.' His reply was, ' you need not trouble yourself about that, as you will always find the note in my possession.'

Int. 3.   Did not Silas H. Sabin say to you, at the time you gave the note and mortgage, that the money he let you have was his son John's, and that it surprised him that he (said John) should make money as fast as he did at dentist business, or words to that effect?

Ans. by trustee.   He did to that effect.   I cannot say he openly said it was John's money.   He made this expression: ' It is surprising how much money John makes in the dentistry business.'

Int. 4.   Do you recollect anything further that Silas H. Sabin said about its being John's money?

Ans.   I do not.

Int. 5.   Was Silas A. Sabin present when you gave the note and mortgage or not?

Ans.   I should not think he was.

Int. 6.   Was there any other person present when the note and mortgage were given?

Ans.   I cannot say certainly, but think not.   I cannot recollect of any one being present.

Int. 7.   Have you ever paid to John Sabin, or to any other person, the sum of money mentioned in the condition of the mortgage deed, a copy of which is herewith exhibited, marked G. on the back thereof?—and please annex the copy to your disclosure, so as to make it a part thereof.

Ans.   I have not; and do not owe the same to Sabin or any other person, except that the sum mentioned in the mortgage deed is the same indebtedness included in the note herein described before by me.   I hereunto annex the copy, as requested.   I verily believe said mortgage deed to be the same one mentioned in my answer to the 1st interrogatory, but cannot say certain, as I have not the original mortgage deed in my possession, or within my present reach."

The above statement was confirmed by Silas A. Sabin, the other executor, who said, also, that he personally knew that the testator furnished the money for which the note was

given, and that it was his individual property, and that John Sabin never had any interest in it.

*Barton* and *Edes*, for the plaintiff.

In this action, Seth Johnson is undoubtedly trustee, as by his disclosure, unless by the disclosure and affidavits annexed thereto the executors of the estate of Silas H. Sabin are entitled to the note.

The admission of Silas H. Sabin, at the time the transaction took place, that he was agent of the defendant, was sufficient to establish his agency. 1 Phil. Ev. 79; Paley on Agency, 212; 7 T. R. 480; 22 Pick. 158; 2 Greenl. Ev. 56.

This declaration, made in the course of the transaction, is evidence, as forming a part of the *res gestæ*. *Franklin Bank* v. *Steam Nav. Co.*, 11 Gill & John. 28.

The purchase money which passed to Johnson was declared by Silas H. Sabin to be the money of his son, the defendant, and recording the mortgage on the county records is equivalent to a delivery of the property in the mortgage and note specified therein to the defendant, and vests the same in him, and gave a credit to the defendant, his son, which it would be a fraud on the defendant's creditors, should he be allowed now to claim and to hold the property against them. *Davis* v. *Sanders*, 11 N. H. Rep. 259.

But how do the executors attempt to do away with these strong evidences of property in the defendant? They first offer the affidavit of the defendant, John Sabin. But this does not in the least invalidate the rights of the plaintiff against the trustee. If Silas H. Sabin acted as agent, as he declared he did, and took the note and mortgage for him, it was not necessary for him to know Seth Johnson, and if his father had his money to loan, as he said he had, he might retain the papers in his own hands for the defendant, and John Sabin might never have had the note or mortgage in his own possession. His affidavit may all be true, but it does not

touch the case. He does not deny that Silas H. Sabin, his father, had money in his hands to loan as his agent.

Neither does the affidavit of Elias Bates go to disprove the same. He found the note and mortgage among the papers of Silas H. Sabin, and the indorsement in his hand writing, but this has no tendency to show that Silas H. Sabin did not have John Sabin's money to loan, as he said he had, and loaned it and took this mortgage and note therefor. He may in his lifetime have accounted to John Sabin for the interest he received, for aught that appears.

Silas A. Sabin swears to too much. The trustee, Johnson, says that Silas A. Sabin was not present when he gave the note and mortgage, and Silas A. Sabin does not say he was present when the money was received by Johnson, and yet he swears positively that he personally knows that Silas H. Sabin furnished the money for which the said note was given. The only reason which he gives for " personally knowing " it, is that he often had access to his father's papers.

His personal knowledge, on close examination of his affidavit, appears irrelevant and visionary.

He is executor of the will, and heir of Silas H. Sabin, and his affidavit should be viewed with jealousy, even if it had the appearance of candor; but with such intrinsic evidence of wholesale swearing on the face of it, it ought to have but little weight, and, we think, should be laid out of the case.

In his first affidavit we think the only thing stated as truth which he could know, is that he " often had access to his father's papers."

In his second affidavit, he states that he was acquainted with his father's property a number of years before his death ; that his father was in the habit of taking an inventory, &c., and the Johnson note is entered on this inventory as his property, and that his father was in the habit, in the latter part of his life, of loaning money and taking notes

running to other persons. This is a fact Silas A. Sabin might or might not know, but from the nature of the case, he could not know whether Silas H. Sabin ever gave or surrendered his claim, interest, or rights to the same, when he retained possession of the papers, and that such was the case of the note signed by Seth Johnson, or not.

What he states as " personal knowledge " is evidently but opinion.

The note being found in the inventory is not, in connexion with the whole case, entitled to much weight.

If he was agent for John Sabin, and loaned his money, he might enter it as assets in his hands, and in the schedule of his indebtedness he might enter the money he received of John to loan. They have not furnished the court with a schedule of his debts, and from such a wholesale deposition as was Silas A. Sabin's we should not expect an exhibit of the other side. The act of including the Johnson note in the schedule of Silas A. Sabin's property did not render it his. *Poor* v. *Hazleton & Tr.*, 15 N. H. Rep. 565.

There is therefore nothing which the defendant could know, from the nature of the transaction, not being present when it was done, or from the means they have given us for knowing, which contradicts the statement of Silas H. Sabin at the time he loaned the money, that he was agent of his son, the defendant, and that the money he then loaned to the trustee was his son's money, and if so, the trustee is clearly liable in the case.

But if it was Silas H. Sabin's money that he loaned, as the executors contend, then we say it was a fraud on the creditors of John Sabin, thus to give his son a credit by taking a note and mortgage running to him, and placing the evidence of it on the county records. And we say that his executors cannot now set up that defence to this action, the making of the notes declared on being subsequent to the mortgage.

The testator, if alive, would in this case be estopped from

claiming any interest in the note against the creditors of the defendant, and his personal representatives are equally bound by his admissions.  1 Greenl. Ev. 243.

Every man is bound to speak and act according to the truth of the case, and the law will presume he has done so, and will not allow him to contradict such a reasonable presumption.  4 Kent's Com. 26, note, (sixth edition.)

And further, if the father, Silas H. Sabin, purchased in the name of the son, though illegitimate, even though he did it with his own money, there will be no resulting trust, but it would be deemed an advancement.  *Page* v. *Page*, 8 N. H. Rep. 187.

*Williamson, Freeman & Mc Clure*, for the trustee.

The trustee ought not to be charged in this action.

I.   Silas H. Sabin was the owner of the note described in the trustee's disclosure, and the same note forms a part of his estate.

Silas H. Sabin advanced the money to Seth Johnson, transacted the business, kept the note and mortgage in his possession from November 1st, 1843, to the time of his decease, in July, 1850, collected the interest annually, as it became due, included the note as his property in the inventories he made annually of his estate, founded his last will on these inventories, and left the note and mortgage among his papers at the time of his death.

Seth Johnson received the money of S. H. Sabin, always found the note in his possession, paid the interest to him during his lifetime, and to his executors since his decease, which he would not have done had he known or supposed that John Sabin had an interest in the note.

John Sabin says he never held any note or claim against S. Johnson, and never did any business with him, nor received notice that he claimed an interest in the note.  The executors say that John Sabin has never made a claim upon

them for the note, nor ever pretended to have any interest in or to the same, or any part thereof.

The executors say they found this note and mortgage, by which it is secured, among the papers of S. H. Sabin. He had treated it as his property. He had practised lending money and taking securities in the names of third persons, retaining and treating such securities as his own property. They included this note in the inventory of his estate, and are charged with the same.

Such management for the term of eight years, by all parties interested in this note, must satisfy this court that John Sabin has never had any interest in it, that S. H. Sabin was the owner of it, and that it now forms a part of his estate.

II. John Sabin states, in his affidavit, that he has never held any note or claim against Seth Johnson. If this be true, there is not the least ground to suppose that he furnished the money received by Johnson, who became his debtor. Had he employed S. H. Sabin as his agent to lend money and take securities in his name, he would not have permitted eight years to pass without ascertaining where his money was invested. If he furnished the money for which this note was given he knew he held a claim against Seth Johnson, though the note may never have been in his possession. He states positively that he has never held any claim against Seth Johnson, which is virtually an absolute denial that Johnson ever received any of his money. Not merely possession, but ownership, is denied by that affidavit. This is consistent with, and supported by, the acts of all the parties, and the other evidence in the case. And did not the plaintiff's counsel consider such to be the effect of these affidavits they would probably have summoned in John Sabin and the executors to answer further. Rev. Stat. ch. 208 §§ 18 and 22.

III. The authorities cited by the plaintiff's counsel show that a person who has transacted business in the name of another is competent as a witness to prove whether any

agency existed, and that none of the parties are estopped from showing the truth in that respect.   The only evidence of agency in this case arises out of the statement of S. H. Sabin, at the time the note was given, and of the note and mortgage being made in the name of John Sabin. Seth Johnson does not pretend to say that S. H. Sabin said the money belonged to John Sabin, or that he was acting as his agent, but he does say that S. H. Sabin told him, " you will always find the note in my possession," a statement inconsistent with any agency for John Sabin or with his right to control the note.   John Sabin virtually denies that S. H. Sabin was his agent, at least in this transaction with S. Johnson, and the executors state, he has not made any claim upon them during the time they have had the note in their possession.   The plaintiff's counsel insinuate that S. H. Sabin, in his lifetime, might have paid over the interest accruing, to John Sabin.   There is no evidence of this, but there is evidence that the executors have not paid anything since his decease.   We might go further, and suggest the probability that if J. Sabin did furnish money, which he lent to the trustee, he has long since received both principal and interest from S. H. Sabin, and would not enable him, by a delay of seven years, to protect himself, by the statute of limitations, from giving an account of his agency.

IV.   If S. H. Sabin did make statements that led Johnson to suppose J. Sabin was the real payee of the note, his executors are not estopped from showing the facts.   S. Johnson always found the note in S. H. Sabin's possession. He had not been injured by any statements made by Sabin. It made no difference with him whether S. H. Sabin or J. Sabin owned the note.   He was the only person to whom any representations were ever made, the only person who could be influenced by them, and who could object to S. H. Sabin claiming as owner, in case he should be injured thereby.   This he did not do, but makes the affidavits a part of his disclosure.   J. Sabin, or his creditors, cannot insist

upon these statements as an estoppel, for they were not made to him or to them. If they may use them as evidence even, they are overcome by the facts in the case. *Tufts* v. *Hayes*, 5 N. H. Rep. 452; *Davis* v. *Sanders*, 11 N. H. Rep. 259; *Hall* v. *Huse*, 10 Mass. Rep. 39; *Wallis* v. *Truesdell*, 6 Pick. 453; 1 Greenl. Ev. 237.

V. S. H. Sabin always kept the note in his possession. J. Sabin says he has no interest or claim in or to it. On this evidence the court would treat the note as payable to bearer, and allow S. H. Sabin to maintain an action in his own name. He might give it in evidence under a count for money had and received. The payee would be regarded as fictitious, and no indorsement would be necessary. *Foster* v. *Shattuck*, 2 N. H. Rep. 446; *Elliott* v. *Abbott*, 12 N. H. Rep. 549; *Tutlock* v. *Brown*, 3 D. & E. 163; *Vire* v. *Lewis*, 3 D. & E. 182.

VI. The note is the evidence of the debt. The mortgage securing it is only a chattel interest, and would cease on the extinguishment of the debt. It is not an interest in real estate, and has none of its properties until a creditor enforce a foreclosure. It will pass by a parol assignment of the debt. The assignee may enforce it, even where he may not have known of its existence at the time he became the owner of the debt. The equitable assignee may maintain a writ of entry in his own name, without an assignment of mortgage, when he could not enforce the collection of the debt. And after foreclosure the person in whose name it was completed would hold the legal title to the land.

The existence of a mortgage is not evidence of an existing debt or of the ownership of the debt, and mortgage creditors of the mortgagee cannot seize this interest, and have, therefore, no occasion for notice who holds it. Registry is notice to creditors, and subsequent purchasers of the mortgagor, and to no other person. *Southerin* v. *Mendum*, 5 N. H. Rep. 420; *Sessions* v. *Bicknell*, 6 N. H. Rep. 557; *Robinson* v. *Leavitt*, 7 N. H. Rep. 99; *Glass* v. *Ellison*, 9

N. H. Rep. 69; *Ellison* v. *Daniels*, 11 N. H. Rep. 274; *Rigney* v. *Lovejoy*, 13 N. H. Rep. 267.

The record of this mortgage, made in January, 1844, is the only knowledge of the existence of this note that the creditors of John Sabin could have. From this they had no reason to presume he owned the note for a day after it was given. Had J. Sabin lent the money and taken the securities, and afterwards sold them to S. H. Sabin, without indorsement or assignment, his creditors could not be permitted to defeat the right of S. H. Sabin, as a fraud upon them, if the transfer was made upon a good consideration. Much less can they charge fraud from the mere knowledge derived from a mortgage made eight years before, when the evidence is conclusive that S. H. Sabin always treated the note as his property, and John Sabin has not set up any claim in or to it.

VII. The property in controversy in this action is personal, not real estate. Taking a note in the name of a third person did not make it his property.

S. H. Sabin kept it in his possession. He never declared his intention to give it to John Sabin. It, therefore, has none of the properties of an advancement. Rev. Stat. ch. 166, § 11.

GILCHRIST, C. J. This process is an equitable action. *Boardman* v. *Cushing*, 12 N. H. Rep. 114. The question is, to whom does the property in the note belong? If the note belongs to the defendant, the trustee is chargeable.

The facts which go to show that the ownership of the note is in the defendant, are the following:

The note is payable to the defendant.

When the note was given, Silas H. Sabin professed to be doing business for the defendant, and said "it was surprising how much money John made by dentistry."

The probability that when he lent money, he would not take a note for it, payable to another person than the owner.

On the other hand, it is to be considered that the note and the indorsements are in the hand-writing of the deceased, and the interest has been paid to his executors. The maker of the note and the defendant were unknown to each other, and the deceased told the maker that he would always find the note in his possession. The note was found among his papers, and inventoried as his property, and the defendant never made any claim to it. Silas A. Sabin swears that he personally knows that his father furnished the money, that the note was his property, and that John (the defendant) never had any interest in it; that his father was in the habit of lending money and taking notes therefor, payable to his different relatives, but never gave up his claim to them when he retained possession of the papers.

It might be shown by the testimony of the defendant, whether the note was his property. He stands indifferent between the parties. He does say, in his affidavit, that he never held any claim against Johnson. But it might have been shown whether he had any money in the hands of his father for investment.

Upon the whole evidence, we think the note did not belong to the defendant.

*Trustee discharged.*